Julia OETTERER, Appellant,

v.

Randy OETTERER, Respondent.

No. ED 78836.

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 20, 2001.

Richard S. Benderm, Rosenblum, Goldenhersh, Silverstein & Zafft, P.C., Clayton, MO, for Appellant.

Sidney A. Thayer, Jr., Washington, MO, for Respondent.

PAUL J. SIMON, Judge.

Julia Oetterer (wife) appeals the judgment dissolving her marriage to Randy Oetterer (husband). On appeal, wife contends that the trial court erred when, in an attempt to equalize the division of marital property and debt, it ordered husband to pay her $4,500 because such ruling erroneously "declared and/or applied the law" in that the trial court failed to take into account the amount of marital debt encumbering the marital portion of wife's profit sharing plan and wife's separate house and thereby incorrectly valued those assets at their gross value of $16,500 rather than their net value of zero. Husband argues on appeal that this court is without jurisdiction as wife did not timely file her Notice of Appeal. We affirm in part and reverse and remand in part.

■ The judgment will be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Langdon v. Langdon,* 792 S.W.2d 645, 646 (Mo.App. E.D.1990). We view the evidence and inferences therefrom in the light most favorable to the judgment and disregard contrary evidence. *Id.* It is the function of the trial court to decide the weight and value to be given to the testimony of any witness. *Id.* Further, "we defer to the trial court even if the evidence could support a different conclusion." *Id.*

In the light most favorable to the judgment, the evidence indicates that husband and wife were married in Franklin County on October 11, 1996 and separated in January of 2000. No children were born of the marriage.

Prior to and throughout the marriage, wife was employed as a secretary at a law firm. Wife participated in the firm's profit sharing plan which increased substantially

in value during the marriage. Husband was self-employed in his scrap salvage business prior to and throughout the marriage.

Following their marriage, husband and wife lived together on South Door Ford Road in Sullivan, Missouri (Door Ford property) until October of 1999, when they purchased a house on Cleavesville Road in Bland, Missouri (Cleavesville property). Wife had purchased the Door Ford property in 1985 and retained it following the purchase of the Cleavesville property.

During the course of the marriage, wife made three loans from her profit sharing plan. The first loan was for $2,000 and she used the proceeds to make improvements on the Door Ford property. The second and third loans were for $3,500 and $6,000 respectively. Wife transferred the proceeds from the second and third loans to husband for the purchase of equipment for his business. Wife also took out a second mortgage on the Door Ford property in the amount of $10,000. Wife used $3,000 of this amount for her personal debts, and the other $7,000 to satisfy two of husband's debts for the purchase of business equipment.

Husband made several improvements to the Door Ford property during the course of the marriage. Husband paid to re-shingle the house and for miscellaneous supplies, replaced a well, and re-enforced a rock driveway. Scrap metal was also stored on the Door Ford property.

On January 7, 2000, wife filed a Petition for Dissolution of Marriage seeking maintenance, and filed her Statement of Income and Expenses and Statement of Property. Husband answered denying wife's allegation that she was in need of maintenance and filed a Cross Petition for Dissolution of Marriage. Wife subsequently waived her maintenance request.

The dissolution hearing was held and at the close of the evidence, the trial judge stated from the bench: "Okay, the Court finds it has jurisdiction over the marriage; marriage is irretrievably broken, and it's ordered to be dissolved. Somebody take notes here so a Judgment can be prepared." The trial judge announced a proposed division of property contemplating the following: Wife was to be awarded the marital portion of the increase in value of her profit sharing plan, valued at $11,000; and a motor vehicle of nominal value. Both were described as marital property. Husband was to be awarded the Cleavesville property, valued at $6,000; his salvage business, valued at $20,000; and the scrap metal located on the Door Ford property, valued at $5,000. While the Cleavesville property was described as marital property, the property status of husband's business and the scrap metal was not identified. Wife was also to be awarded the following separate property: The non-marital portion of her profit sharing plan, the Door Ford property, and miscellaneous personal property. Under the proposed division, husband was to pay $11,000 to wife which would be representative of the $16,500 lent by wife to husband for his business from wife's profit sharing plan and the second mortgage less the $5,500 in improvements made by husband to the Door Ford property. The judge stated that such payment ". . . . ought to about balance this thing out. Maybe a thousand or $2,000 off either way, but I'm not going to worry about that." Wife's attorney was ordered to file a draft of the judgment to be signed by the judge.

On August 15, 2000, husband's attorney by letter requested "two changes" in the judgment draft. He stated that he did not recall the judge "suggesting that husband make every effort to refinance the residence within 60 days and to remove [wife's] name from the same," and request-

ed the omission of said language from the draft. He further requested that the legal description to the Cleavesville property be included in the judgment, "so the [judgment] can operate as a deed to the property." On August 16, 2000, wife's attorney wrote a letter to the judge stating that he did not have any problems with the requested changes.

On August 17, 2000, the judge wrote a letter to both attorneys acknowledging receipt of the judgment draft and stating that he believed that it was necessary to modify the disposition he announced from the bench at the close of the hearing and that the "moneys advanced by [wife] from her separate funds were in the nature of an investment by her in a business that was and continues to be a marital asset." He valued the business at $20,000 and the Cleavesville property at $5,500 after debt, for a total of $25,500 for husband; and valued the "marital portion of the profit-sharing plan at $11,000 and determined that $5,500 of [wife's] house's value was attributable to [husband's] efforts, for a total of $16,500." He concluded that payment by husband to wife of $4,500 "would equalize the distribution." No mention was made of the $5,000 in scrap metal or of the motor vehicle of nominal value.

On October 31, 2000, a judgment was entered awarding wife the marital portion of the increase in value of $11,000 in her profit sharing plan and the motor vehicle of nominal value. The $11,000 increase was specifically described as marital but the status of the motor vehicle was not stated. Wife was also awarded the non-marital portion of her profit sharing plan, the Door Ford property, and miscellaneous personal property as her separate property. Husband was awarded the Cleavesville property, which was identified as marital property, valued at $6,000; "his" salvage business, a "sole proprietor-

ship," valued at $20,000; and the scrap metal on the Door Ford property, valued at $5,000. While the Cleavesville property was described as marital property, the judgment was silent as to the property status of husband's business and the scrap metal. The Judgment further provided that wife borrowed $16,500 from her profit sharing plan and by way of a second mortgage against her home to enable husband to purchase equipment and vehicles for his business, and that husband "made repairs to the separate property of [wife] in the approximate value of [$5,500]." Finally, the judgment ordered husband to pay $4,500 to wife "as and for his share of the repayment of the marital debt incurred by the parties, and used by [husband] in his business."

On November 13, 2000, husband moved to amend the Judgment and Decree of Dissolution, alleging that wife's attorney did not make the changes requested in his attorney's August 15th letter. On November 15, 2000, wife filed her Motion to Amend Judgment or for New Trial requesting the trial judge to amend the judgment by replacing the $4,500 payment requirement with the $11,000 payment requirement originally contemplated in the proposed division of property. In her motion, wife contended that the decreased payment from husband was contrary to the judge's proposed ruling at the close of the evidence, not supported by the evidence, "contrary to the best evidence," "neither equitable nor a fair and reasonable distribution of the marital property and debts of the parties," and an abuse of discretion.

Following a November 21, 2000 hearing on the motions, the judgment was amended to include the proposed legal description of the Cleavesville property but wife's motion was denied.

We first address husband's contention that this court lacks jurisdiction because wife's Motion to Amend Judgment or for New Trial was overruled on November 21, 2000, and that, therefore, wife's Notice of Appeal filed December 7, 2000, was not timely filed pursuant to Rule 81.04. As husband correctly points out, Rule 81.04(a) provides that an appeal shall not be effective unless the Notice of Appeal shall be filed no later than ten days after a judgment or order becomes final. Husband concludes that because wife's motion was denied on November 21, 2000, the trial court's judgment became "final and appealable" on that date. However, husband fails to recognize Rule 81.05(a)(2), which provides that a judgment becomes final at the expiration of thirty days after its entry where no timely authorized after-trial motion is filed, and that where such motion is filed, a judgment becomes final at the earlier of: (A) Ninety days from the date of the motion's filing, or (B) "the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later."

▮ The judgment was entered on October 31, 2000. On November 15, 2000 wife timely filed her Motion to Amend Judgment or for New Trial. Said motion was denied on November 21, 2000. Therefore, the judgment became final at the later of November 21, 2000, or thirty days after the October 31 judgment, namely November 30, 2000. Clearly, the judgment became final on November 30, 2000, and wife therefore had until December 10, 2000 to file her Notice of Appeal. As wife's Notice of Appeal was filed on December 7, 2000, husband's argument is without merit.

In her only point on appeal, wife contends that the trial court erred in its attempt to equalize the division of marital property and debt by ordering husband to pay only $4,500 to wife as part of the division of the marital property and debt because such ruling erroneously "declared and/or applied" the law in that the trial court failed to take into account the amount of marital debt encumbering the marital portion of wife's profit sharing plan and wife's separate house and thereby incorrectly valued those assets at their gross value of $16,500 rather than their net value of zero.

▮ Pursuant to Section 452.330 RSMo (2001) (all further references herein shall be to RSMo 2001 unless otherwise indicated), the trial court must set apart to each spouse his or her separate property and divide the remaining marital property and marital debts "in such proportions as the court deems just after considering all relevant factors." Specific findings on whether assets are marital or separate property are a "necessary antecedent of a subsequent just division of marital property." *In re Marriage of Below*, 8 S.W.3d 233, 235 (Mo.App. E.D.1999). "It is not enough to apportion all of the property between the parties without first designating it as either separate or marital property." Failure to specifically identify property as marital or non-marital makes it impossible to determine whether a trial court's division of marital property is "just" under Section 452.330. *Id.*

▮ Here, the judgment fails to specifically designate whether or not husband's business, valued at $20,000; the scrap metal, valued at $5,000; and the motor vehicle of nominal value are marital or separate. We are well aware that an obscure judgment may be construed with reference to the pleadings and record, and "where on the whole record its sense can be clearly ascertained, the judgment will be upheld." *Sanders v. Sanders*, 933 S.W.2d 898, 902 (Mo.App. E.D.1996). However, reference to the pleadings and

the record does not provide us with a clear indication of the status of these assets. The business is referred to as a "sole proprietorship" and "[husband's] business" in the judgment, a "marital asset" in the judge's August 17, 2000 letter, and "husband's business" in the judge's proposed division. The scrap metal is simply awarded to husband without indication of its status in the judgment and not mentioned in the August 17, 2000 letter, and the proposed division suggests the disposition announced in the judgment. Finally, no mention is made of the status of the motor vehicle in the judgment nor in the August 17, 2000 letter, which fails to mention the motor vehicle altogether, and the proposed division refers to the motor vehicle as marital.

The judge should have specifically designated these properties as separate or marital. The property status of husband's business and the scrap metal is important in determining whether the debt is marital or separate or a loan or an investment and is necessary in the determination of whether the property and debt have been distributed fairly and equitably. Therefore, the judgment must be reversed and remanded for specific designation of the properties' status and a distribution in accordance therewith.

The portions of the judgment relating to the disposition of property are reversed and remanded. In all other respects the judgment is affirmed.

JAMES R. DOWD, C.J. and SHERRI B. SULLIVAN, concur.